## Case No. 6,237.
### HAWES v. GAGE.
[5 O. G. 494; Merw. Pat. Inv. 244.] [1]
Circuit Court, N. D. New York. Oct., 1871.

PATENTS—INFRINGEMENT—SLIGHT VARIATION— DAMAGES—WHO LIABLE.

1. The specification of a patent for a hotel-register, in which the alternate leaves were devoted to advertisements, the patentee stated that the interleaves might be of bibulous or sized paper, the former being preferable, but in his claim he specified only bibulous paper; and it was *held* that he had secured to himself only such a register when the leaves were of the kind so specified.

2. It was left to the jury to determine whether the defendant had infringed the patent by using such a register with interleaves of a paper known as yellow medium paper and occupying a middle ground between bibulous paper and sized paper; and the jury found for the plaintiff.

3. In estimating the damages the jury should consider the amount which the plaintiff might have obtained from those who would have advertised in his register.

4. The keeper of a hotel who uses such a register trespasses upon the rights of the patentee, and is liable to him for the infringement.

[This was a bill in equity by Charles L. Hawes against William C. Gage for infringement of letters patent No. 63,889, granted to plaintiff April 16, 1867, for an advertising hotel register.]

James A. Allen, for plaintiff.
N. B. Smith, for defendant.

WOODRUFF, Circuit Justice (charging jury). This case, as presented by the counsel, is an instance of which we have very many in the administration of the law of patents, in which a patentee has come into court with a claim, which, in its immediate consequences to the defendant, and its direct pecuniary result to the plaintiff, seems of small importance. The amount of damages sustained by this plaintiff for the particular infringement, if it be an infringement, of his patent, which is the subject of complaint here, no doubt it has occurred to your minds would not be worth pursuing at the expense of a lawsuit. It cannot be upon any just estimate of this evidence that the actual damages sustained by this particular infringement here is at all adequate to the expenses of the trial; and the plaintiff's counsel says to you frankly that it is not that which is the object of this prosecution. The object is to establish his right, and place himself in a situation in which he can enjoy the fruits of his invention by establishing and bringing to the notice of the people who may attempt to use this invention that it is his property. And in this point of view these suits are often of immense importance to the plaintiff. By way of illustration I might call your attention to a patent with the subject of which you are all doubtless familiar. Elias Howe obtained a patent for what had never before been used in the construction of the sewing-machine—for a needle having its eye at the point; a very simple thing. He might have found an individual using one of these needles, and brought an action against him; but of what consequence would have been the damage in a single case? However, to Elias Howe it was of immense importance—an importance which was illustrated in the large fortune which I believe he realized as the result of his ingenuity; that the patent was his, and that all who attempted to use it might know that they were using a thing of which he was the patentee. That illustrates the importance of such cases, and what, I understand the plaintiff's counsel to concede, is the main object in bringing this action—to establish the right to that to which he claims his client is entitled under the laws of the United States; in which he should be protected that he might, as Elias Howe did, if it is but one cent from each needle, derive, as the product or the result of his invention, that one cent, and thereby by the accumulation of cents, derive the profit to which he is entitled.

Another suggestion, gentlemen. If the patent itself is of more or less importance, so long as it is useful, and so long as it is secured to the patentee by the laws of the United States, he is to be protected. If the patent is of small importance he is not so fortunate as the man who has made an invention of greater importance. But they are alike to be protected. A man that has a small farm is as much entitled to be protected in the enjoyment of it as a man who owns his thousands of acres. We do not deal with cases in courts of justice by comparisons of value or interest. We try to protect the poor as well as the rich. And if this patentee has realized profit, so that he can come here apparently relieved from the necessity of labor, it is a fortunate thing.

[1] [Merw. Pat. Inv. 244, contains only a partial report.]

We, however, have nothing to do with that question. For certain territory in this state the plaintiff has purchased the interest. If he has any rights he is to be protected, and you will protect him so far as the evidence calls upon you to do so.

I come, then, to consider what the patent is. Now, the plaintiff here claims that John L. Mitchell invented an improved hotel-register—and the granting of the patent itself is evidence that he did [2]—that it was new. The patent proves, in the absence of any countervailing testimony, that it was new, that it is useful; prima facie, it is to be deemed useful. The defendant was not precluded by it. He had a right to offer any testimony he chose to show that it was not useful. But if the patentee was the first inventor it will be your duty to find that it was new and useful on this evidence. Then, unless it is proved that it is of no utility whatever, and that, in the face of the judgment of the patent office of the United States on this subject, he is entitled to be protected in it according to its true interpretation.

According to the description given in his patent it is plain—and it is plain according to the examples produced here—that this was a thing intended to serve the purpose of furnishing, first, a new mode, plan, or device for furnishing to traders and men of business a novel and peculiar vehicle for advertising; one that should bring to the eye, as was supposed, of a great number of persons, especially transient persons, these advertisements; who would have before their eyes, it may be, the very thing advertised they had come to buy; they could not look over the register to see who had arrived, scarcely open its leaves for the purpose of registering their names, without their eye falling upon some advertisement, or some series of advertisements. In that way a notoriety would be given to the advertisements which it was supposed would be desirable. And it seems by the proof that they had found in practice a number of persons willing to pay for the insertion of their cards in the register the amounts that have been named—willing to pay for that as a useful mode of advertising their trade or business. In my judgment it is clearly apparent that the invention had another object in view. It was to furnish to some extent—greater or less—by this interposed leaf a blotter to the names that should be written, making the book very convenient to hotel-keepers, and also answering another purpose: To preserve the names thus written from being obliterated or effaced.

The patentee in his specification has chosen to describe this register as one in which the interleaf may be made of bibulous or of sized paper, the former being preferable. He prefers, he says, the bibulous paper, and

2 [Patent No. 63,924 was granted to J. L. Mitchell, April 16, 1867.]

yet he claims in the description of his patent that this book may be constructed and the advertisements displayed upon the interleaf pages made of one or the other. Now, if he had described the patent in that way, and it had been deemed valid for that purpose, it would have embraced a book that contains the interleaf with the advertisements, whether the interleaf was of bibulous paper or of sized paper with the advertisements thereon. But the law requires a patentee, in describing his invention, to give not only such description as will enable the people to make it, when its term of exclusive use has expired, but in order that the community may be apprised of precisely what he claims to be his invention, it requires him to state in distinct terms what he claims. By that he must stand or fall when he comes into a court of justice with his patent. If, through ill advice, or misapprehension, or ignorance, his claim does not cover all that he is really entitled to, the court and jury cannot help it. That is his misfortune. He must bear it. The law provides for his relief in another mode. On discovering that his claim does not cover all his invention, through some mistake or fraud, he can go back to the patent office, surrender his patent as imperfect, and take out another in the place of it that shall embrace the whole invention—a thing that is very commonly done. The patentee here has limited his claim. I don't say whether it is broader or narrower than that to which he was entitled, but it is limited, and he must stand by what he claims.

(The court here read the claim from the patent.)

Having thus stated his claim exactly no third party would suppose that he claimed an interleaf of sized paper, although he says that just such a book in other respects might be made of bibulous or sized paper. First he says he prefers bibulous paper, and then he says he claims bibulous paper. I say, therefore, that the true interpretation of this patent is that he has secured by it the right to the exclusive introduction or use of a hotel-register or interleaf with advertisements printed thereon, that interleaf being made of bibulous paper; and unless the defendant here has used just such a register the plaintiff is not entitled to recover. Now, it is not necessary, perhaps, for me to define to you what bibulous paper is. It is quite obvious. The term "bibulous" is to drink in—paper that will drink in moisture to which it is applied. It comes from the word bibo, meaning to drink in—absorb. If the patentee had had occasion to describe some portion of his structure, and had indicated in it that it was to be supplied with soft paper as distinguished from hard, nobody would have thought that he was entitled to be protected in the use of soft paper, because the manufacturer said he did not make paper called by that name. The patentee is not restricted to any technical name used by the manu-

facturer in designating the paper he manufactures. So that the question here in reference to the infringement is whether the defendant has used paper that, within the fair meaning of that term, is absorbent or bibulous paper. The specification seems to indicate that the patentee had in view a distinction between bibulous paper and sized paper. Therefore the testimony of Mr. Van Benthuysen on that subject is important. If I have understood him correctly he says that yellow sheet wouldn't be known as sized paper; that sized paper is understood as paper that is prepared in the mode that he described, with the animal-size spread upon the surface, and that when it is completed it is adapted for writing. Neither is it blotting-paper, as known to the art—that is, made in the manner which he described without any size to harden it. On the contrary, it is deemed desirable to make it as soft or spongy as it can be made, that its absorbing qualities may be as large as possible. But that this paper is known as yellow medium, and that it occupies, as he describes, a medium ground. In respect to its absorbent qualities he thinks it occupies a middle position between sized paper as known and blotting-paper as known in the trade.

Now, gentlemen, it will be for you to say upon this evidence and upon your observations of the paper and the tests that have been submitted to you of its absorbent qualities, whether the paper is bibulous paper. The counsel rightly insisted to you that courts and juries should not favor the avoidance of a patent by an immaterial variation. Quite otherwise; that when, in substance and effect, if the useful purpose for which this device or thing is intended is the same, it should be treated as an infringement; but if in substance and effect it is different, it is equally true, on the other hand, that it is no infringement. Therefore, I leave that question to you on the right of recovery, Is this in substance a bibulous paper? Its likeness in other respects is not called in question—that it is made a vehicle for advertisements to serve in that respect all the purposes for which the patent was designed. It is for you to say whether the variation in the particular style or kind of paper is substantial. If you find it is, then it will be your duty to find for the defendant. If not it will be your duty to find for the plaintiff in establishment of his patent. In that point of view the plaintiff will be entitled to such damages as he has proved. In such cases the law gives him, and it is your duty to find, the actual damage, nothing more. And the amount of damages actually sustained is perhaps susceptible of ascertainment by you in your judgment in view of all the facts proved. You have had an account of the profit which a party has realized at Lockport and certain other places, and may be expected to realize from the furnishing of such a book.

I do not understand that it is claimed or suggested that anybody gets a profit from the hotel-keeper, and that meets a suggestion that has been urged upon your attention that the defendant here has allowed somebody to put a book upon his counter and then he has used it, made no profit on it himself. Why, gentlemen, that is the very thing that renders part of the utility of the mode of distribution for which this thing was invented. The object is to get a profit out of the advertisers. It is one of the inducements given to the advertisers. If this were a question of what damages you should give, as punitive or vindictive damages, this might be a very pertinent fact. But, gentlemen, that is not a question for your consideration here. All the plaintiff is entitled to by your verdict is the loss which he has sustained. If he has sustained any loss in this instance, it is supposed to be the loss of the chance to get the fifteen dollars or whatever other sum he could obtain from those various advertisers for inserting their names in this register. I think it appears that in a former year a book was placed in this same hotel under the patent in question. If that be so the proprietors of the Empire Hotel were not altogether ignorant of the nature of the thing they were using, and they were apprised by the heading of the book that it was not the same thing. However, this question of good or bad faith on the part of the proprietor is not before you. On the question of computation of the profits, the court is somewhat at a loss. But you have the materials, such as they are, furnished by the testimony; and in your sound judgment, if you find for the plaintiff under the views which I have suggested, you will give a verdict for the damages which the plaintiff has sustained, in your sound judgment, by the infringement."

The jury retired under the charge of an officer, and, after a short consultation, returned into court with a verdict in favor of the plaintiff. They assessed the damages at $28.44.
[For other cases involving this patent, see note to Hawes v. Antisdel, Case No. 6,234.]